202 P.2d 904

In re RUTHERFORD.

No. 5177.

Supreme Court of Arizona.

Feb. 21, 1949.

Darrell R. Parker, of Phoenix, for State Bar.

Alexander B. Baker, of Phoenix, for respondent.

PER CURIAM.

Charles H. Rutherford, respondent herein, was charged by the Local Administrative Committee for Maricopa County of the State Bar of Arizona, hereafter referred to as the State Bar, with violation of Rules 12, 27, 28, 34, and 38 of the Canons of Professional Ethics governing the practice of attorneys. He was charged with fourteen specific violations, all in the same vein and general pattern, occurring during the years 1945, 1946, and 1947, in that he solicited business for himself, directly and through intermediaries or touters; that he collected fees for performing practically no service whatsoever; and in some instances collected fees without regard to his clients' best

interests. All of these instances were in connection with cases before the Industrial Commission of the State of Arizona, hereafter referred to as the commission. Respondent is also charged with a conspiracy together with one Ray Gilbert, the then chairman of said commission, to defraud certain claimants of a part of the awards due them by having them engage respondent as their attorney on the representation that he enjoyed special privileges before said commission because of his friendship with said chairman.

The Administrative Committee held several hearings at which respondent and his attorney were present. Exhibits were introduced and admitted in evidence and sworn testimony amounting to nearly 1000 pages was reduced to writing. The committee made both "general" and "specific" findings, and certified the matter to the Board of Governors of the State Bar. Subsequently, on October 22, 1948, the board heard arguments from both sides. It then ordered its secretary to certify the entire record to this court for action.

The committee's "specific findings" sustained the charges against respondent in substance as follows: (1) He solicited law business from one V. E. Wagner. (2) He induced said Wagner to sign a false statement to present to the commission. (3) He performed practically no services for one Margaret Ellen Hoover, yet he requested a 25% fee of a lump-sum settlement she was to receive from the commission, and actually contracted for and did receive a 15% fee of the lump-sum settlement. (4) He sought Mrs. Hoover to solicit other legal business for him from one Mrs. Henderson. (5) He performed services for Mr. and Mrs. Charles S. Herrington at the request of Ray Gilbert by signing an application for a lump-sum settlement before the commission. He then performed services that were unnecessary and without the scope of his employment for the sole purpose of collecting a fee; he further instructed and acquiesced in the endorsement of an Industrial Commission check by Mrs. Herrington, who was not the payee named therein, for the purpose of collecting his fee. (6) The committee further reported that while some counts of direct solicitation by intermediaries were not sustained by the evidence, yet there was foundation for the complaints. (7) In several instances respondent collected fees without regard to the best interests of his clients and in some cases collected exorbitant fees.

Disregarding the "General Findings" of the committee, this court is of the opinion that their "Specific Findings" are well sustained by the evidence. The evidence is replete with a pattern followed by respondent in these cases. Through some source in the commission he would learn that a certain claimant would be due for a "lump-sum" settlement by the commission, or that

the "lump sum" was agreed upon by the commission but not yet ordered, and he would contact these claimants as prospective clients. That other people would also contact such claimants and recommend respondent as having an "in" or enjoying special privileges with the commission because of his friendship with the then chairman Ray Gilbert. That on occasion Ray Gilbert would recommend respondent to claimants over other attorneys with the admonition to claimants that "We have to have someone we can trust out here." That pursuant to respondent's advance information and contacts with the claimants he would "represent" them before the commission by merely picking up their check and collect his fee of 10% to 25% of the amount of the "lump-sum settlement." Such solicitation, of course, is unethical, and the collection of such fees, even though less than the statutory amounts allowed, is unethical in the highest degree.

Respondent asks for exoneration because he has practiced law for 42 years and has never before been charged with unethical conduct. Such a record, of course, is admirable, but it does not offset his reprehensible conduct in these cases. Respondent lays great stress on the fact that none of his clients complained of his actions and charges, and alleges that he is merely a "victim" of an attempt by other commissioners to oust Ray Gilbert as a member of the commission. Regardless of how the matter came to light, the committee and the Board of Governors of the State Bar were bound to give this matter their attention. They, like this court, owe a duty to the general public and other members of the bar to protect them from such unscrupulous and unethical conduct. The fact that the evidence was uncovered by an investigation initiated by the commission itself against another member of the commission makes no difference as far as respondent is concerned. His duty as a lawyer is to conduct himself in accordance with the Canons of Ethics of the State Bar regardless of whether or not his clients complain. Respondent by his practice has proved himself unworthy of the trust placed in him as an attorney, and is unfit to practice law.

It is therefore hereby ordered that respondent Charles H. Rutherford be and he is hereby disbarred from the practice of law in Arizona.

LA PRADE, C. J., and UDALL, STANFORD, PHELPS, and DE CONCINI, JJ., concur.